United States District Court
District of Massachusetts

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
          v.                   )
                               )    Criminal No.
CARLIN RIGAUD,                 )    06-10385-NMG
                               )
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The defendant in this criminal case, Carlin Rigaud ("Rigaud" or "Little C"), moves the Court to suppress certain statements he made to law enforcement officials on October 31, 2006, at the Essex County Jail in Middleton, Massachusetts ("the October 31 statements").

I.   **Background**

On June 9, 2006, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as well as state and local authorities executed a search warrant issued by the Malden District Court at a residence in Malden, Massachusetts ("the June 9 search"). Rigaud along with several others were present and arrested at the scene. While represented by counsel, Rigaud was arraigned in the Malden District Court on June 12, 2006, on a complaint which charged him with: 1) trafficking cocaine, 2)

-1-

conspiracy to violate the controlled substance act, 3) two counts of illegal possession of a firearm, 4) improper storage of a firearm and 5) possession of a Class D substance ("the Malden Complaint"). Following the arraignment, Rigaud was released on bail.

In August, September and October, 2006, federal and state authorities, using undercover agents and police officers reportedly made a series of controlled buys of crack cocaine from Rigaud and others. Federal authorities initiated this investigation after learning that Rigaud and associates had resumed selling drugs. On October 6, 2006, Rigaud was arrested on an unrelated matter and held in lieu of bail at the Essex County Jail. The drug investigation continued with undercover buys from others reportedly associated with Rigaud. Federal complaints for the arrest of Rigaud, Rigaud's twin brother, Carlens ("Big C"), Marc Lundy ("Lundy") (the three co-defendants in this case) and Cynthia Saintilus ("Saintilus"), Rigaud's girlfriend and mother of his child, were filed on October 26, 2006. Saintilus and Lundy were arrested on October 30, 2006 and the federal complaint was unsealed that day.

On October 31, 2006, John Mercer ("Mercer") of the ATF went to the Essex County Jail to deliver detainers and to question Rigaud. Mercer was one of the agents who participated in the June 9 search. An investigator from the Essex County Sheriff's

Department accompanied Mercer to question Rigaud. As is his standard practice, Mercer told Rigaud that if he cooperated, the United States Attorney would be informed of that cooperation. Mercer also informed Rigaud that the government did not intend to ask the court to detain Saintilus at her detention hearing. It is unclear whether Mercer merely provided Rigaud with that information or suggested that the government would not move to detain Saintilus only if Rigaud cooperated. At some point, Rigaud signed a <u>Miranda</u> waiver.

During the interrogation, Rigaud was asked about a gun seized pursuant to the June 9 search. Rigaud alleges that he was told that if he did not admit the gun was his, Saintilus would be charged with possession of the gun. In testimony at the hearing on the motion to suppress, Mercer denied having made such a statement to Rigaud. Rigaud told Mercer that the gun belonged to him.

On November 29, 2006, the government filed an indictment ("the federal indictment") charging Rigaud with: 1) conspiracy to distribute and possess with intent to distribute cocaine base (Count One), 2) seven counts of possession with intent to distribute cocaine base on or about June 9, September 14, 20, 27 and October 5, 11 and 30, 2006 (Counts Three and Five through Ten) and 3) possession of a firearm in furtherance of a drug trafficking crime (Count Twelve). Rigaud was inadvertently

released from state custody, despite the federal detainer, before his co-defendants were arraigned on December 6, 2006 and was a fugitive until his arrest on June 18, 2007. On January 15, 2008, Rigaud filed a motion to suppress his October 31 statements.

## II.  Rigaud's Motion to Suppress (Docket No. 42)

Rigaud argues in his motion to suppress that the October 31 statements were: 1) obtained in violation of his Sixth Amendment right to counsel, 2) involuntary and therefore obtained in violation of the Fifth Amendment and 3) made without his knowing, intelligent and voluntary waiver of Miranda rights.

### A.  Sixth Amendment Right to Counsel

#### 1.  Legal Standard

Once a defendant asserts his right to counsel at an arraignment, any subsequent waiver of that Sixth Amendment right during a police-initiated custodial interview is ineffective. Michigan v. Jackson, 475 U.S. 625, 636 (1986). The Sixth Amendment right to counsel is, however, offense specific. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). When the Sixth Amendment right to counsel attaches, a defendant has a right to counsel for all offenses, even if not formally charged, that are considered the same offense. Texas v. Cobb, 532 U.S. 162, 173 (2001). To determine whether two offenses are the same for Sixth Amendment purposes, a Court must use the Blockburger v. United States, 284

U.S. 299 (1932), analysis originally developed in the context of Fifth Amendment double jeopardy jurisprudence. Id. When the same act or conduct constitutes a violation of two distinct statutory provisions, whether there are two offenses or one depends on whether each provision requires proof of a fact which the other does not. Blockburger, 284 U.S. at 304.  In a case such as this one, where there are some state and some federal charges, even if a state charge is the "same offense" as a federal charge under Blockburger, the offenses may not be the same for purposes of the Sixth Amendment.  The First Circuit has held that when the two statutory provisions under which the defendant is charged are in the laws of separate sovereigns (i.e., federal and state), the two offenses are not the same except when one sovereign controls the prosecution of another. United States v. Coker, 433 F.3d 39 (1st Cir. 2005).

    **2.   Analysis**

In his motion to suppress, Rigaud argues that the state distribution and conspiracy counts charge the "same offenses" as the distribution and conspiracy counts charged in the federal indictment.  Rigaud also claims that the count in the Malden Complaint charging illegal possession of a firearm is the "same offense" as the federal charge of possession of a firearm in furtherance of drug trafficking.  Rigaud also appears to argue that the federal government had committed itself to prosecute him

as early as June 11, 2006 and at least no later than October 26, 2006, thereby triggering Rigaud's right to an attorney.

The government does not appear to dispute that when the October 31 statements were made, the federal government had committed itself to prosecute and Rigaud's right to an attorney had attached. As discussed in more detail below, the government argues that by signing the Miranda waiver, Rigaud forfeited his right to an attorney. The question raised by Cobb and its progeny is whether Rigaud had already invoked his right to an attorney for the "same offenses", namely the offenses charged in state court, when he made the October 31 statements. If Rigaud had already invoked his right to an attorney for the "same offense", the waiver of his right to an attorney was invalid even if procured voluntarily. See Michigan v. Jackson, 475 U.S. 625, 636 (1986).

As the government argues in its brief and Rigaud conceded at the hearing on the motion to suppress, the gun charge in federal court is not the "same offense" under Blockburger as the gun charge in state court. In state court, Rigaud was charged with possessing a firearm without a permit and improperly storing a firearm. In federal court, Rigaud was charged with possession of firearms in furtherance of a drug trafficking crime. The charge of possessing a firearm without a permit requires proof that Rigaud did not have a valid license/permit to possess the

firearms whereas the federal firearm law (which Rigaud was charged with violating) does not require proof of that element. The federal firearm charge requires proof that Rigaud used, carried or possessed a firearm in furtherance of a drug trafficking crime whereas the state charge does not require proof of such an element. As a result, the state and federal firearms charges are not the same offense under Blockburger.

With respect to the distribution charges in Counts Five through Ten of the federal indictment, the transactions that gave rise to those charges occurred long after the June 9 search and did not result in charges in state court. Because they did not arise out of the same transaction, they cannot be the same offense as any state charge. Presumably in recognition of that fact, Rigaud emphasized at the hearing that the conspiracy (as opposed to the distribution) charges are the same offenses.

The government admits that the conspiracy charge in Count One and the distribution charge in Count Three of the federal indictment meet the Blockburger "same offense" test when compared to the state conspiracy and drug trafficking charges. The First Circuit has made clear, however, that state and federal charges are not the same offense for Sixth Amendment right-to-counsel purposes. United States v. Coker, 433 F.3d 39, 47 (1st Cir. 2005). Rigaud contends that there is an exception to the dual sovereignty doctrine that applies in this case because the

federal government controlled the prosecution of the state charges. See id. at 45-47.

The government explains that, to the contrary, the federal government was not involved in the state investigation of Rigaud until the June 9 search when local authorities invited Mercer to be present during the search because guns were expected to be seized. The federal investigation occurred only after federal officials learned of possible additional criminal conduct following the June 9 search and arrests. Rigaud proffers no information to suggest that the state investigation and prosecution were directed or controlled in any way by the federal government and Mercer testified at the suppression hearing that, except for his participation in the June 9 search, no other federal agent was involved with the state activities. The federal government did not dominate the prosecution of the state charges and therefore the charges in federal and state court did not constitute the same offenses for purposes of the Sixth Amendment. See Coker, 433 F.3d at 47.

### B. The Voluntariness of the October 31 Statements

#### 1. Legal Standard

The Due Process Clause prohibits compelled confessions. Miller v. Fenton, 474 U.S. 104, 109 (1985). The voluntariness of an admission depends on whether the will of the defendant was overborne so that the statement was not a free and voluntary act.

Procunier v. Atchley, 400 U.S. 446, 453 (1971). In making that assessment, the totality of the surrounding circumstances must be taken into account including the characteristics of the accused and the details of the interrogation. Id. The government bears the burden of establishing voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972).

**2.   Analysis**

Rigaud argues that his October 31 statements were not voluntary because Mercer both made promises and threatened him. He contends that Mercer 1) led Rigaud to believe that his statement would be considered cooperation and that he would be treated leniently, 2) promised that in exchange for Rigaud's cooperation, Saintilus would not be detained and 3) threatened that if Rigaud did not admit ownership of the gun, Saintilus would be charged with its possession. Rigaud likens his case to Lynumn v. Illinois, 372 U.S. 528 (1963). In Lynumn, the Supreme Court found a confession coerced where the police officers promised the defendant leniency, threatened to take her children from her if she did not confess and told her that if she did not cooperate her state financial aid for support of her children would be cut off. Id. at 534.

Mercer testified that, as is his standard practice, he told Rigaud that if he cooperated, Mercer would inform the United States Attorney of that cooperation. The government admits that

Rigaud was told that it planned to move for Saintilus's release on conditions. It is not clear whether Mercer merely offered that information to alleviate Rigaud's concerns about Saintilus or suggested that the government would not seek to detain Saintilus only if Rigaud agreed to speak to Mercer. Mercer denied that he threatened to charge Saintilus with any crime related to guns.

Rigaud's case is readily distinguishable from the facts in Lynumn. As the government points out, unlike the defendant in Lynumn, Rigaud is not unfamiliar with the criminal justice system. He had been arrested in June, 2006 and again in October, 2006. Moreover, Mercer did not offer leniency but merely informed Rigaud that information about his cooperation would be conveyed to the United States Attorney which, standing alone, does not render a subsequent statement involuntary. See United States v. Baldacchino, 762 F.2d 170, 179 (1st Cir. 1985). Apparently, no other threat or promise was made to Rigaud. Even if Mercer implied that Rigaud should cooperate to ensure his girlfriend's release, such a promise alone does not rise to the level of coercion described in Lynumn. See United States v. Jackson, 918 F.2d 236, 242 (1st Cir. 1990) (distinguishing Lynumn and holding that the totality of the circumstances, particularly defendant's experience with the criminal justice system, indicated that defendant's statement was voluntary

notwithstanding the fact that the police informed the defendant that his sister had been arrested and may have made an implied promise that she would be spared harm). Rigaud's statements were voluntary.

### C.   Rigaud's Waiver of His Miranda Rights

#### 1.   Legal Standard

The prosecution may not use statements from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to preserve the privilege against self-incrimination. <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436, 444 (1966). A defendant may waive his privilege against self-incrimination and his right to retained or appointed counsel provided the waiver is made voluntarily, knowingly and intelligently. <u>Id.</u> A Miranda waiver has two distinct requirements:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

<u>Moran</u> v. <u>Burbine</u>, 475 U.S. 412, 421 (1986). To determine the voluntariness of a waiver, it is necessary to look at the totality of the circumstances. <u>Id.</u> The government may prove a waiver by a preponderance of the evidence. <u>Colorado</u> v. <u>Connelly</u>, 479 U.S. 157, 168 (1986).

**2.   Analysis**

Rigaud contends that due to the promises and threats made by Mercer, his waiver of his Miranda rights was not knowing, intelligent and voluntary. Specifically, he suggests that he cooperated because of Mercer's misrepresentation that his statements would gain him lenient treatment and that he was coerced by 1) the promise that Saintilus would not be detained if he cooperated and 2) the threat that she would be charged with possession of a firearm if he did not admit that the gun was his.

As explained above, Mercer's statements to Rigaud did not amount to coercion. Rigaud signed a Miranda card acknowledging that he understand and waived his rights. He did so knowingly, intelligently and voluntarily and therefore his statements will not be suppressed.

### ORDER

In accordance with the foregoing, Rigaud's Motion to Suppress Statements (Docket No. 42) is **DENIED.**

**So ordered.**

/s/Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated April 9, 2008